UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D. ALKON, M.D., PC, ON BEHALF OF PATIENT GD,<br><br>**Plaintiff,**<br><br>v.<br><br>**CIGNA HEALTH AND LIFE INSURANCE COMPANY, AND FORWARD AIR CORPORATION PLAN,**<br><br>**Defendants.** | Case No.: 2:20-cv-02365<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is an ERISA action concerning Defendants' alleged under-reimbursement to Plaintiff out-of-network medical provider for post-mastectomy breast reconstruction surgical services rendered to Patient GD. Defendants CIGNA Health and Life Insurance Company ("CIGNA") and Forward Air Corporation Benefit Plan (the "Plan") move to dismiss Plaintiff's Complaint. ECF No. 21. The Court reviewed the parties' submissions and decides the motions without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS** Defendants' motions to dismiss.

**I.    BACKGROUND[1]**

On August 1, 2018, Patient GD (the "Patient"), who suffered from breast cancer, underwent a bilateral mastectomy with tissue expander at Trinitas Hospital in Elizabeth, New Jersey. Compl., ECF No. 1, ¶ 15. Dr. Joseph Alkon performed a two-stage, post-mastectomy breast reconstruction on the Patient on February 1, 2018[2] and August 20, 2018. *Id.* at ¶¶ 4, 15, 31. Plaintiff in this matter is Joseph D. Alkon, M.D., P.C., a medical practice group based in Linden, New Jersey, and Dr. Joseph Alkon is the Chief of Plastic Surgery at Trinitas Regional Medical Center. *Id.* at ¶ 12. Dr. Alkon and his practice are not part of CIGNA's network of participating healthcare providers—Plaintiff and Dr. Alkon are "out-of-network." *Id.* at ¶ 17. On the dates of service, the Patient was employed by Forward Air had health coverage through Defendant Plan administered by Defendant CIGNA. *Id.* at ¶ 2. There is no dispute that the Plan is an "employee welfare benefit plan" governed by and subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

---

[1] The facts are drawn from the Complaint, ECF No. 1.

[2] Plaintiff refers to these events as occurring on both February 1, 2018 and August 1, 2018. *Compare* Compl. ¶ 4 *with* Compl. ¶ 15. February 1, 2018 appears to be the correct date. *See* Pl's. Opp. Decl. ¶ 3.

Plaintiff alleges that both stages of Patient's surgery were preauthorized by CIGNA. Compl., ¶¶ 18, 31. Authorization B4371HK1 is a January 17, 2018 letter to the Patient stating: (1) that Trinitas Regional Medical Center is not a part of CIGNA's network; (2) that CIGNA approved Trinitas's request to cover the February 1, 2018 procedures; and (3) that the procedures would be covered at the "out-of-network level." ECF No. 27-2, Ex. 1. Authorization B5HFCVK1 is an August 2, 2018 letter to the Patient regarding the August 20, 2018 procedure, stating that the procedure was approved. *Id.* Ex. 2. Neither authorization contains reimbursement rates or any other provision specifying payment terms. Following each stage of the Patient's surgery, Plaintiff submitted invoices for its services to CIGNA. *Id.* at ¶¶ 19, 32. Together, those invoices totaled $292,084. Compl. at ¶¶ 19, 32, 65. The allowed out-of-network amount under the Patient's Plan was $2,721.83. *Id.* at 19, 32, 66. According to Plaintiff, the difference between what Plaintiff billed and what the Plan paid left "an unreimbursed amount of $289,362.1[2]." *Id.* at ¶ 66. Plaintiff engaged in and exhausted the Plan's administrative appeals seeking additional reimbursement, without success, arguing that because the network was allegedly inadequate, Dr. Alkon should have been granted an in-network exception. *Id.* at ¶¶ 23, 36, 38, ECF No. 27-2, Exs. 3, 4. By letter dated June 11, 2019, CIGNA told the Plan participant that CIGNA was "unable to approve coverage for the requested service(s) at the in-network benefit level. We have qualified network heath care professional/facility which can provide services to you." ECF No. 28, Ex. 1. Plaintiff received an Assignment of Benefits and a Designation of Authorized Representative from Patient GD. *Id.* at ¶¶ 38, 40.

On March 5, 2020, Plaintiff filed a Complaint, seeking to recover the unreimbursed amount of its billed charges. ECF No. 1. In Count I, Plaintiff claims that Defendant CIGNA, in violation of the Plan and 29 U.S.C. § 1132(a)(1)(B), ERISA § 502 (a)(1)(B), under-reimbursed Plaintiff for breast reconstruction surgeries. *Id.* at ¶¶ 63-67. In Count II, Plaintiff claims that Defendant Plan, in violation of the Plan and § 1132(a)(1)(B), breached its fiduciary duty of loyalty and violated its fiduciary duty by permitting is claims administrator, CIGNA, to under-reimburse Plaintiff. *Id.* at ¶¶ 68-74. Plaintiff seeks as relief unpaid benefits and attorney fees and costs. *Id.* at ¶ 74.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations

must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants CIGNA and Forward Air Corporation Plan argue that: (1) Plaintiff lacks standing because the Plan prohibits assignment of litigation to a third-party provider; (2) the Women's Health Cancer Rights Act relied upon in the Complaint does not create a private cause of action; (3) Dr. Alkon is not seeking relief pursuant to ERISA's exclusive remedy scheme as he does not identify a Plan provision entitling him to additional benefits; and (4) a cause of action for breach of fiduciary duty is not viable where benefits sought on behalf of an individual plan participant.. Defs.' Mot. 1. The Court addresses whether Plaintiff lacks standing to assert an ERISA § 502(a)(1)(B) claims on behalf of the Patient.

Plaintiff seeks relief against Defendants through ERISA § 502(a)(1)(B), which provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan . . ." 29 U.S.C. § 1132(a)(1)(B). A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may be eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Defendants argue that medical providers and provider groups, such as Plaintiff, meet neither definition, and ERISA confers no direct rights upon providers. The Third Circuit, however, recognizes derivative provider standing if the provider obtains an assignment of benefits. *See New Jersey Brain & Spine Center v. Aetna*, 801 F.3d 369 (3d Cir. 2015). Defendants argue that the Patient's Plan contains a clear and unambiguous anti-assignment provision.[3] The Third Circuit held in *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." 890 F.3d 445, 453 (3d. Cir. 2018). Consequently, Defendants argue that Plaintiff lacks standing because the Patient cannot assign her ERISA § 502(a)(1)(B) claim to Joseph D. Alkon, M.D., P.C. Defs.' Mot. 6-8.

---

[3] The Plan's anti-assignment provisions provides: "You may not assign to any party, including, but not limited to, a provider or healthcare service/items, your right to benefits under this plan, nor may you assign any administrative, statutory, or legal rights or causes of action you may have under ERISA, including, but not limited to, any rights to make a claim for plan benefits, to request plan or other documents, to file appeals of denied claims or grievances, or to file lawsuits under ERISA. Any attempt to assign shall be void and unenforceable under all circumstances . . ." Defs.' Mot., Ex. A. at 47.

3

Plaintiff respond that Joseph D. Alkon M.D., P.C. has standing to proceed as an assignee of the Patient because: (1) Defendants' anti-assignment provision was not contained in a Summary Plan Description; (2) Defendants waived the anti-assignment provision; and (3) Plaintiff is an authorized representative of the Patient. Pl.s'Opp. 6-10. The Court addresses each in turn.

### A. Validity of the Anti-Assignment Provision

Plaintiff first argues that because the anti-assignment provision was not contained in a Summary Plan Description ("SPD") but in a plan booklet, it is not part of the plan documents. Plaintiff cites the Ninth Circuit decision *King v. Community Insurance Company*, wherein the plan sponsor drafted the SPD, which incorporated the plan administrator's plan benefit booklets in a limited capacity. 829 F. App'x 156, 160 (9th Cir. 2020). The SPD in *King* stated that "Plan booklets provided by the insurance company . . . describe[] the healthcare or other welfare benefits, and the terms and conditions for receiving those benefits . . . ." *Id.* at 161. The Court concluded that "[t]he anti-assignment provision is plainly not a benefit," and so the plan sponsor's SPD did not incorporate it into the plan document. *Id.* Plaintiff appears to argue that *King* stands for the broad proposition that an anti-assignment provision contained in a plan benefit booklet drafted by a claim administrator is never enforceable. Pl.'s Opp. at 6-7 ("because the purported anti-assignment provision simply appears in the plan booklet, it is not an enforceable term . . ."). As just summarized, *King* is more specific. In *King*, the SPD specifically limited the terms from plan booklets that were incorporated into the plan documents. Defendants point out that here, the plan booklet containing the anti-assignment provision is the *only* plan document, and that the document explicitly states, "[t]his document printed in December, 2017 takes the place of any documents previously issued to you which describe your benefits." Defs.' Mot., Ex. A, ECF No. 21-3 at 4. Because the Plan is self-funded by Forward Air, there is not insurer or separate SPD. And in contrast with *Gridley v. Cleveland Pneumatic Company*, 924 F.2d 1310, 1316 (3d Cir. 1990), the plan benefit booklets include all of the Plan terms, not an "extraordinarily perfunctory description." *See* Defs.' Mot. Ex. A. The Plan document states that it is a Plan, includes "ERISA Required Information", is 74 pages, and the reference to the SPD relied upon by Dr. Alkon is part of the "Statement of [ERISA] Rights" that is required by 29 U.S.C. § 1021. For these reasons, the anti-assignment provision's presence in a plan booklet does not preclude enforcement.

### B. Waiver of the Anti-Assignment Provision

Next, Plaintiff alleges that Defendants waived the anti-assignment provision. This occurred, Plaintiffs allege, when CIGNA sent Plaintiff a Provider Explanation of Medical Payment that stated, "patient is not liable if you accept the ERS allowable amount." Compl. ¶¶ 26, 35. Because this offer to Plaintiff did not mention an anti-assignment provision, Plaintiff contends that the anti-assignment provision is waived. Waiver "involves the intentional relinquishment of a known right and must be evidence by a clear, unequivocal, and decisive act from which an intention to relinquish the right can be based." *Somerset Orthopedics Assocs., P.A. v. Horizon Healthcare Servs.*, U.S. Dist. LEXIS 73174 (D.N.J.

4

Apr. 27, 2020). The Court agrees with Defendants that CIGNA's sending to Plaintiff a Provider Explanation of Medical Payment including a possible settlement term is the sort of routine correspondence that does not demonstrate intentional relinquishment of any known rights, akin to interactions described by the *Somerset Orthopedic* Court. In a throwaway line, Plaintiff states that, "Under a conflict of law analysis, waiver should be determined under Tennessee law," declining to specify that analysis in any detail except noting that "Forward Air Plan is a Tennessee Plan." Pl.'s Opp. at 8. The Court declines the invitation to apply Tennessee law. *See Continental Ins. Co. v. Honeywell Int'l, Inc.* 234 N.J. 23, 52 (2018) (applying a governmental interest analysis followed by Restatement (Second) of Conflicts of Law § 188 factors and § 6 factors).

### C. Plaintiff's Designation of Authorized Representation

Plaintiff responds that Plaintiff's assignment was valid because Plaintiff received a Designation of Authorized Representative from the Patient.[4] 29 C.F.R. 2560.503-1 is one of ERISA's implementing regulations which establishes, *inter alia*, internal administrative appeal procedures that a plan must maintain by which a claimant may appeal an adverse benefit determination within the plan prior to filing suit. On reply, both Defendants argue that 29 C.F.R. 2560.503-1(b)(4) applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts. Defendants' Reply, ECF No. 25, 8. Plaintiff argues that Defendants waived this argument because they did not include it within their original moving papers. Because Defendants argued in motions to dismiss that the anti-assignment provision deprives Plaintiff of standing to bring this suit on the Patient's behalf and they merely refute related arguments asserted in opposition, Defendants properly asserted this argument on reply. *See Cooperman v. Horizon Blue Cross and Blue Shield*, 2020 WL 5422801, *3 (D.N.J. Sept. 10, 2020) (Martini, J.).

The Court will now consider the merits. 29 C.F.R. 2560.503-1(b)(4) provides that "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . ." 29 C.F.R. 2560.503-1(b) The regulation continues, "[t]he claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination. Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . ." *Id.* at (b)(4). This Court has repeatedly held that this regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals. *See, e.g.*,

---

[4] Plaintiff Designation of Authorized Representative from the Patient states, in relevant part: "I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized Representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees." Compl. at ¶ 40.

*Menkowitz v. Blue Cross Blue Shield of Illinois*, No. CIV. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014) (29 C.F.R. 2560.503-1(b)(4) "applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts."); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. CIV.A. 14-6950 FLW, 2015 WL 4387981, at *8 (D.N.J. July 15, 2015) (quoting *Menkowitz*, WL 5392063, at *3 (D.N.J. Oct. 23, 2014)). Plaintiff raises no argument as to why the Court should not adopt this reasoning. Consequently, once again, the Court holds 29 C.F.R. 2560.503-1(b)(4) does not bar enforcement of the anti-enforcement clause in light of its Designation of Authorized Representative. *Cooperman*, 2020 WL 5422801, *3.

For all of these reasons, the Court finds that Plaintiff Joseph D. Alkon, M.D., P.C. does not have standing to assert Patient's ERISA claim. The Court declines to address the remainder of Defendants' arguments. Defendants' motion to dismiss is **GRANTED**.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss, ECF No. 21 is **GRANTED**. Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**Date: March 3, 2021**

/s/ William J. Martini
WILLIAM J. MARTINI, U.S.D.J.