UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSEPH D. ALKON, M.D., PC, ON BEHALF OF PATIENT G.D.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CIGNA HEALTH AND LIFE INSURANCE COMPANY, AND FORWARD AIR CORPORATION PLAN,**<br><br>**Defendants.** | Case No.: 2:20-cv-02365<br><br>**OPINION** |

## WILLIAM J. MARTINI, U.S.D.J.:

This is an ERISA action concerning Defendants' alleged under-reimbursement to Plaintiff, an out-of-network medical provider, for post-mastectomy breast reconstruction surgical services rendered to Patient G.D. Defendants CIGNA Health and Life Insurance Company ("CIGNA") and Forward Air Corporation Benefit Plan (the "Plan") moved to dismiss Plaintiff's Complaint. ECF No. 21. On March 4, 2021, the Court granted Defendants' motion and dismissed the matter with prejudice, reasoning that Plaintiff lacked ERISA standing to bring this matter on behalf of Patient G.D. On March 18, 2021, Plaintiff filed a motion for reconsideration of the Court's March 4, 2021 Opinion and Order dismissing the case. ECF No. 32. Defendants filed an opposition. ECF No. 35. Plaintiff filed no reply.

Before the Court, for the fourth time in one year, is the question of whether a designated authorized representative has standing under ERISA to challenge adverse benefits determinations in federal court where the patient's plan contains an anti-assignment provision. Again, the Court concludes that the answer is no: Where a patient's plan contains an anti-assignment provision, neither the patient's assignment of benefits to nor a Designation of Authorized Representative naming a healthcare practice are bases for ERISA standing. For this reason, and because Plaintiff's other arguments are without merit, the Court **DENIES** Plaintiff's reconsideration motion.

## I. BACKGROUND[1]

On August 1, 2018, Patient G.D. (the "Patient"), who suffered from breast cancer, underwent a bilateral mastectomy with tissue expander at Trinitas Hospital in Elizabeth, New Jersey. Compl., ECF No. 1, ¶ 15. Dr. Joseph Alkon performed a two-stage, post-mastectomy breast reconstruction on the Patient on February 1, 2018 and August 20, 2018. *Id.* at ¶¶ 4, 15, 31. Plaintiff in this matter is Joseph D. Alkon, M.D., P.C., a medical practice group based in Linden, New Jersey, and Dr. Joseph Alkon is the Chief of Plastic Surgery at Trinitas Regional Medical Center. *Id.* at ¶ 12. Dr. Alkon and his practice are not part of CIGNA's network of participating healthcare providers—Plaintiff and Dr. Alkon are "out-of-network." *Id.* at ¶ 17. On the dates of service, the Patient was employed by Forward Air had health coverage through Defendant Plan administered by Defendant CIGNA. *Id.* at ¶ 2. There is no dispute that the Plan is an "employee welfare benefit plan" governed by and subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiff alleged that both stages of Patient's surgery were preauthorized by CIGNA. Compl., ¶¶ 18, 31. Authorization B4371HK1 is a January 17, 2018 letter to the Patient stating: (1) that Trinitas Regional Medical Center is not a part of CIGNA's network; (2) that CIGNA approved Trinitas's request to cover the February 1, 2018 procedures; and (3) that the procedures would be covered at the "out-of-network level." ECF No. 27-2, Ex. 1. Authorization B5HFCVK1 is an August 2, 2018 letter to the Patient regarding the August 20, 2018 procedure, stating that the procedure was approved. *Id.* Ex. 2. Neither authorization contains reimbursement rates or any other provision specifying payment terms. Following each stage of the Patient's surgery, Plaintiff submitted invoices for its services to CIGNA. *Id.* at ¶¶ 19, 32. Together, those invoices totaled $292,084. Compl. at ¶¶ 19, 32, 65. The allowed out-of-network amount under the Patient's Plan was $2,721.83. *Id.* at 19, 32, 66. According to Plaintiff, the difference between what Plaintiff billed and what the Plan paid left "an unreimbursed amount of $289,362.1[2]." *Id.* at ¶ 66. Plaintiff engaged in and exhausted the Plan's administrative appeals seeking additional reimbursement, without success, arguing that because the network was allegedly inadequate, Dr. Alkon should have been granted an in-network exception. *Id.* at ¶¶ 23, 36, 38, ECF No. 27-2, Exs. 3, 4. By letter dated June 11, 2019, CIGNA told the Plan participant that CIGNA was "unable to approve coverage for the requested service(s) at the in-network benefit level. We have qualified network health care professional/facility which can provide services to you." ECF No. 28, Ex. 1. Plaintiff received an Assignment of Benefits and a Designation of Authorized Representative from Patient G.D.. *Id.* at ¶¶ 38, 40. The Assignment of Benefits states, in relevant part:

> I hereby assign and convey to the fullest extent permitted by law any and all
> benefit and non-benefit rights (including the right to any payments) under

---

[1] The facts are derived almost verbatim from the Court's March 4, 2021 Opinion, which were in turn drawn from the Complaint, ECF No. 1. The parties do not appear to disagree on the facts of this dispute in a way that is material to Plaintiff's reconsideration motion.

> my health insurance policy or benefit plan to Dr. Joseph Alkon and Joseph Alkon, M.D. (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service. It is specifically intended by this assignment of benefits to assign . . . any and all of my rights, including without limitation . . . (iv) to bring any appeal, lawsuit or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in determination of benefits under any insurance policy or benefit plan.

*Id.* at ¶ 39. The Designation of Authorized Representative stated, in relevant part:

> I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees.

*Id.* at ¶ 40. The Court derives the abridged language of the Assignment of Benefits and the Designation of Authorized Representative from Plaintiff's Complaint because, although they are central to the arguments made in Plaintiff's opposition to Defendants' motion to dismiss and those arguments that are renewed on reconsideration, to the Court's knowledge, the actual documents including these terms have at no time during this litigation been included as exhibits.

The Patient's Plan included the following clause, entitled Assignment and Payment of Benefits:

> You may not assign to any party, including, but not limited to, a provider or healthcare service/items, your right to benefits under this plan, nor may you assign any administrative, statutory, or legal rights or causes of action you may have under ERISA, including, but not limited to, any rights to make a claim for plan benefits, to request plan or other documents, to file appeals of denied claims or grievances, or to file lawsuits under ERISA. Any attempt to assign shall be void and unenforceable under all circumstances. . . .

Pl.'s Mot. to Dismiss, Ex. A. 47, ECF No. 21-3.

On March 5, 2020, Plaintiff filed a Complaint, seeking to recover the unreimbursed amount of its billed charges. ECF No. 1. In Count I, Plaintiff claimed that Defendant CIGNA, in violation of the Plan and 29 U.S.C. § 1132(a)(1)(B), ERISA § 502 (a)(1)(B), under-reimbursed Plaintiff for breast reconstruction surgeries. *Id.* at ¶¶ 63-67. In Count II, Plaintiff claimed that Defendant Plan, in violation of the Plan and § 1132(a)(1)(B), breached its fiduciary duty of loyalty and violated its fiduciary duty by permitting is claims administrator, CIGNA, to under-reimburse Plaintiff. *Id.* at ¶¶ 68-74. On March 4, 2021,

3

the Court granted Defendants' motion and dismissed the matter with prejudice, concluding that Plaintiff lacked ERISA standing to bring this matter on behalf of Patient G.D..

## II. STANDARD OF REVIEW

> A motion for reconsideration must set forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked. When the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. The Court will reconsider a prior order only where a different outcome is justified by: (1) intervening change in law; (2) availability of new evidence not previously available; or a (3) need to correct a clear error of law or manifest injustice.

*United States v. Davis*, 05-cr-382, 2012 WL 1950217, at *1 (D.N.J. May 30, 2012), *aff'd*, 514 F. App'x 97 (3d Cir. 2013) (cleaned up and citations omitted).

## III. DISCUSSION

The question, put to the Court for the fourth (and hopefully final) time in one year, is whether a designated authorized representative has standing under ERISA to challenge adverse benefits determinations in federal court where the patient's plan contains an anti-assignment provision. The answer is no: Where a patient's plan contains an anti-assignment provision, neither the patient's assignment of benefits to nor a Designation of Authorized Representative naming a healthcare practice are bases for ERISA standing. The Court sets forth a comprehensive explanation.[2]

The Court begins with ERISA: the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Section 502(a), 29 U.S.C. § 1132(a), under which Plaintiff in this matter brought its claim against Defendant CIGNA for unpaid benefits, is an "integrated enforcement mechanism," "a distinctive feature of ERISA, . . . essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Massachusetts Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 147 (1985)). Section 502(a) "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging formation of employee benefit plans." *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). ERISA § 502(a)(1)(B) provides:

---

[2] The Court declines to address Plaintiff's other arguments because they are clearly without merit and duplicative of arguments raised earlier or in similar, recent cases.

4

> A civil action may be brought—(1) by a *participant* or *beneficiary*—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B) (emphasis added).

For Plaintiff Joseph D. Alkon, M.D., PC to bring its ERISA § 502(a)(1)(B) claim, it must be either a "participant" or "beneficiary." A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may be eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Plaintiff is not a "beneficiary" or "participant." No party here argues that it is.

Having no direct ability to bring suit on behalf of patients under the language of ERISA § 502(a), healthcare providers sought *derivative* standing. In *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 n. 7 (3d Cir. 2004), the Third Circuit demurred. Declining to take a position on whether a healthcare provider has standing to assert claims *assigned* by a patient to a healthcare provider under Section 502(a), the Court noted that "almost every circuit to have considered the issue" had concluded that providers do have standing and rejected the argument that it had previously taken a contrary view. *Pascack Valley Hosp. Inc.*, 388 F.3d at 400 n. 7. In the wake of *Pascack Valley*, lower courts in the Circuit assumed that healthcare providers had power to assert properly assigned ERISA claims on behalf of their patients. Finally, ten years after *Pascack Valley*, the Third Circuit formally recognized that, although ERISA is silent on the issue of derivative standing, healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n. 10 (3d Cir. 2014). In this case, Plaintiff received from the Patient an Assignment of Benefits specifically assigning, among other things, the right "to bring any appeal, lawsuit or administrative proceeding, for and on [the Patient's] behalf, . . . against any person and/or entity involved in determination of benefits under any insurance policy or benefit plan." Compl. ¶ 39.

But what type of assignment is necessary to confer derivative standing: Must an assignment explicitly include not just the right to payment but also the patient's legal claim to that payment if a provider is to file suit? The District Court for the District of New Jersey was split. *Compare Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.,* No. 06–928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) ("[I]t is illogical to recognize that ... a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."), *with MHA, LLC v. Aetna Health, Inc.,* No. 122984, 2013 WL 705612, at *7 (D.N.J. Feb. 25, 2013) ("[T]he Court respectfully disagrees with the view that there is no distinction between an assignment of

a right to payment and an assignment of plan benefits. It is only the latter that creates derivative standing in a provider assignee to sue under § 502." (internal quotation marks and citations omitted)). The Third Circuit resolved the split by taking the former view: "an assignment of the right to payment logically entails the right to sue for non-payment." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). This dispute, however, is not relevant to this matter because the Patient's assignment specifically includes the right to sue for non-payment. Compl. ¶ 39.

There is, however, another wrinkle. In 2018, the Third Circuit held in *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." 890 F.3d 445, 453 (3d. Cir. 2018). Here, Patient's plan contains an anti-assignment clause. Plaintiff agrees with Defendants that anti-assignment clauses are "valid and enforceable." Pl.'s Recon. Mot. 13. The Third Circuit set forth an alternative potential avenue for recovery in the face of an anti-assignment clause: power of attorney. A patient "may confer on his agent the authority to assert [a] claim on his behalf, and the anti-assignment clause no more has power to strip [the healthcare provider] of its ability to act as [a patient's] agent than it does to strip [the patient] of his own interest in his claim." *Am. Orthopedic*, 890 F.3d at 455.

Replying on these cases, Plaintiff asserts two principal arguments, the first old and the second new: (1) the Claims Procedure Regulation, 29 C.F.R. § 2560.503-1(b)(4), permits a designated authorized representative permits Plaintiff to pursue a benefit claim on the Patient's behalf in federal court; and (2) consistent with the Third Circuit's conclusion in *American Orthopedic* regarding an agent's ability to act as an agent on behalf of a patient through a power of attorney, here, Plaintiff is a designated authorized representative, acting as an agent-in-fact. The Court addresses each argument.

### A. The Claims Procedure Regulation

The Claims Procedure Regulation, 29 C.F.R. § 2560.503-1, is one of ERISA's implementing regulations which establishes, *inter alia*, internal administrative appeal procedures that a plan must maintain by which a claimant may appeal an adverse benefit determination within the plan prior to filing suit. 29 C.F.R. § 2560.503-1(b)(4) provides that "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . ." 29 C.F.R. § 2560.503-1(b). The regulation continues, "[t]he claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination. Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . ." *Id.* at (b)(4).

This Court has repeatedly held that the Claims Procedure Regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member

exhausts those appeals. *See, e.g.*, *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. CIV. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014) (29 C.F.R. § 2560.503-1(b)(4) "applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts."); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. CIV.A. 14-6950 FLW, 2015 WL 4387981, at *8 (D.N.J. July 15, 2015) (quoting *Menkowitz*, WL 5392063, at *3 (D.N.J. Oct. 23, 2014)). Most recently, the Court held this in *Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, No. 2:19-cv-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020), *reconsideration denied*, No. 2:19-cv-19225, 2020 WL 7264144 (D.N.J. Dec. 10, 2020). After *Cooperman*, the Court twice decided that 29 C.F.R. § 2560.503-1(b) did not avail a healthcare provider asserting ERISA claims on its patient's behalf. *Prestige Inst. for Plastic Surgery, P.C. on behalf of S.A. v. Aetna Life Ins. Co.*, No. cv2010371RMBAMD, 2021 WL 1625117, at *3 (D.N.J. Apr. 27, 2021) (citing *Cooperman*, 2020 WL 5422801, at *4); *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Group*. No. cv2013834KMJBC, 2021 WL 3124313, at *9 (D.N.J. July 22, 2021).

Other courts have reached the same conclusion. *See Park Ave. Aesthetic Surgery P.C. v. Empire Blue Cross Blue Shield*, No. 19-cv-9761, 2021 WL 665045, *5 (S.D.N.Y. Feb. 19, 2012) (holding "that a medical provider's status as an Authorized Representative does not negate an unambiguous anti-assignment provision or otherwise independently provide a cause of action pursuant to § 502(a)(1)(B)"); *Mbody Minimally Invasive Summery P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13-cv-6551 (DLC), 2016 WL 2939164, at * 6 (S.D.N.Y. May 19, 2016) (holding "plaintiffs `authorized representative theory on standing also fails because of the unambiguous anti-assignment provisions of the Governing Plans"); *Aerocare Med Transom Sys Inc v. Int'l Bhd. of Elec. Workers Local 1249 Ins. Fund*, No. 5:18-cv-0090 (GTS/ATB), 2018 WL 6622192, at * 8 (N.D.N.Y. Dec. 18, 2018); *Memorial Hermann Health Sys. v. Pennwell Corp. Med. and Vision Plan*, No. H-17-2364, 201? WL 6561165, at * 1 Q (S.D. Tex. Dec. 22, 2017) (holding that the regulation applies "solely" to administrative appeals and does not create standing to file suit against a plan or its administrators); *AllianceMed LLC v. Aetna Life Ins. Co.*, No. CV-16-02435-PHX-JAT, 2017 WL 394524 at * 3 (D. Ariz. Jan. 30, 2017) (same); *Infoeuro Grp. v. Aetna Life Ins. Co.*, No. 2:19-cv-05083- AB (JCx), 2019 WL 3006549, at * 9 (C.D. Cal. May 3, 2019) (same).

To understand why this Court and others have reached the consensus that the Claims Procedure Regulation only applies to internal claims and appeals, not to federal lawsuits, the Court turns to the language of the regulation. Section 2560.503-1 begins as follows:

> Scope and purpose. In accordance with the authority of sections 503 and 505 of the Employee Retirement Income Security Act of 1974 (ERISA or the Act), 29 U.S.C. 1133, 1135, this section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries.

7

29 C.F.R. § 2560.503-1.  The Claims Procedure Regulation purports to rely on the authority set forth in Sections 503 and 505, *not* Section 502, which, as quoted above, permits federal actions for unpaid benefits.  Section 503 states:

> In accordance with regulations of the Secretary, every employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  Section 505 states:

> Subject to subchapter II and section 1029 of this title, the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter.  Among other things, such regulations may define accounting, technical and trade terms used in such provisions; may prescribe forms; and may provide the keeping of books and records, and for the inspection of such books and records.

Neither Section 503 nor 505 purport to give the Secretary of Labor the power to authorized representatives to litigate in federal court.  Not only does the Claims Procedure Regulation not include language permitting authorized representatives of claimants to bring claims in federal court, if it did include such language, it would be outside the scope of Sections 503 and 505, from which the regulation derives authority.

Plaintiff makes creative interpretation arguments.  They are without merit.  Plaintiff cites several cases in support of its theory.  As Defendants point out, a majority of those cases address benefit denial letters in suits brought by plan participants after their claims for long term disability benefits were denied.  The cases are otherwise inapposite.

### B.  **Whether Plaintiff Is an Attorney in Fact for Patient G.D.**

Plaintiff argues on reconsideration for the first time that Joseph D. Alkon, M.D., PC is, as the Patient's authorized representative, acting as an agent-in-fact, consistent with the *American Orthopedic* Court's conclusion regarding the ability of patients to confer upon agents the authority to assert a claim on their behalf through a power of attorney.  The Designation of Authorized Representative in this case, Plaintiff contends, "is identical to the power of attorney discussed in *American Orthopedic*."  Pl.'s Mot. for Recon. 13.  But just as in *American Orthopedic*, Plaintiff waived this argument.  *Am. Orthopedic*, 890 F.3d at 455 ("Appellant waived its arguments concerning the power of attorney by failing to raise them in its opening or reply brief . . . ").  Nevertheless, the Court addresses why it is without merit.

Plaintiff makes no attempt to show that the Designation of Authorized Representative amounts to a power of attorney.  As this Court has pointed out, New

Jersey's Revised Durable Power of Attorney Act, N.J.S.A. 46:2B-8.1, *et seq.*, provides that "the principal authorizes another *individual or individuals or a qualified bank . . .* known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent." *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. CV 19-8783, 2020 WL 1983693, at *7 (D.N.J. Apr. 27, 2020) (quoting N.J.S.A. 46:2B-8.2(a)). In *Somerset Orthopedic*, Plaintiff could not establish that healthcare practices were "individuals or a qualified bank" under the language of the statute, or that caselaw supported this contention. *Id.* at *8 ("[N]o party points the Court to any relevant case law that addresses whether an entity other than one that falls into the definition of "banking institution" can be an attorney-in-fact."). Even if healthcare practices could act as a principal's attorney in fact, Plaintiff does not attempt to show that the Designation of Authority complies with New Jersey's power of attorney procedural requirements. *See Personal Image, PC v. Tech Briefs Media Group Medical Plan*, No. CV203747JMVMF, 2021 WL 486905, at *4 (D.N.J. Feb. 10, 2021) (explaining that "Assignment of Benefits and Ltd. Power of Attorney" did not satisfy New Jersey's power of attorney procedural requirements). The Designation of Authorized Representative that the Patient signed does not make Joseph D. Alkon, M.D., PC an attorney in fact.

\*     \*     \*

The Court, in holding that Plaintiff lacks ERISA standing, does not pass on whether the proliferation of anti-assignment provisions in employer-sponsored health insurance plans that generally preclude healthcare providers from seeking adequate reimbursement from insurance companies is consistent with ERISA's "careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging formation of employee benefit plans." *See* Jordan Davis, *Seeking A Second Opinion: A Call for Congressional Evaluation of Anti-Assignment Provisions in Employee Health Plans*, 89 Fordham L. Rev. 2265, 2268 (2021) (analyzing *Cooperman*, 2020 WL 5422801, and examining whether the effect of anti-assignment provisions undermines the intended ERISA protections of employer-sponsored employee health insurance plans). This question is within the exclusive purview of the Congress.

### IV.   CONCLUSION

Lastly, because Plaintiff has no standing under ERISA § 502 to bring a claim, the Court concludes that granting Plaintiff leave to amend its Complaint would be futile. Plaintiff's motion for reconsideration, ECF No. 32 is **DENIED**. An appropriate Order follows.

**Dated: August 3, 2021**

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**